Our third and final case, 25-4531, United States v. Morgan, Ms. Gleason. If it please the court, my name is Kathleen Gleason and I represent the defendant and appellate in this case, Travis Morgan. The issue in this case is whether the district court erred when she did not vary downward from a correctly calculated guideline sentence, which I understand is a high bar. And I think really at the outset, I don't know if it's a gatekeeper or not, but I think the first thing that I need to address is this court's ability to consider, to presume that a within guideline sentence is reasonable. And in this case, I believe that it is, that Mr. Morgan has met that presumption because the sort of the purpose of being able to presume a within guideline sentence reasonable is based on the long line of sentences or of cases that have explained sort of the purpose of the guidelines. I mean, the purpose of the guidelines is to have some uniformity. There is a presumption that when the guidelines are correctly calculated, that each of those specific offense characteristics are relevant to a sentence in the case. The cases have called the guidelines, you know, the lowest zone or the benchmark. And I think that's correct. In this case, the reason that it is different is because the way the guidelines were calculated, Mr. Morgan possessed a firearm that had an extended magazine. It had a magazine with a capacity of 16 rounds. The threshold for an extended magazine is 15 rounds. The difference in this case is that while he is, his guidelines are enhanced for that possession. So a within guideline sentence essentially punishes him for the possession of a what's presumed to be a more dangerous firearm. Where in Mr. Morgan didn't own the firearm, didn't choose the firearm, he had no sort of responsibility or agency of why the firearm in his hand had an extended magazine. I can ask you about that. Do you concede that the guideline doesn't really get into that level of detail? It just says if you possess a weapon with an extended magazine, you're liable to have this enhancement applied to you? Yes, your honor. It absolutely does. And that's why Mr. Morgan did not contest the calculation of the guidelines. And that's asking us to rewrite the guideline. No, your honor. What I'm asking the court to do is to consider that when the district court entered its sentence, that it abuses discretion by not considering that while the specific offense characteristic applies in calculating the guidelines to consider the reason why it applies. And then because I've alleged a substantive error, then consider that reason as it affects the 3553A factors when imposing a correct sentence. So address my concern. It looks to me you can't win on the guidelines argument. So what you look like to me is something you might want to call like a collateral attack on the base offense level here because that's a different sort of entity. But am I reading that at least in terms of the way you're going on it? I don't think you can win on the guidelines argument here just in and of itself because that just doesn't fit. But the base offense level is what you really are attacking here. Yes, you are. I actually agree with that, that that Mr. Morgan can't attack the calculation of the guideline. But I'm not sure I've ever seen a case with the facts of this and maybe it bears at least make sure we on the same page as what we understand the facts to be. Give us a little factual basis of what happened here, because I'm seeing someone who's in a car that uses the very gun that the guideline says is going to give you a higher sentence. Yes, your honor. I'm happy to do that. What what happened in this case and it's all in the record, of course, is that Mr. Morgan and his girlfriend were having an argument in their residence and he pushed her down and she got up and was going to leave. And he said some words. I don't remember them exactly. Not nice words and threatening words to her. And he said something like you won't ever get there. That's correct. I certainly can't hide from the facts, your honor. Yes. And she left to get into her car to leave. He grabbed the firearm, which belonged to his girlfriend and went out. Get it from your honor. I frankly don't know. I wasn't trial counsel and it's not in the record. He could see the firearm he grabbed. He certainly knew about the existence of the firearm. It was a it was a nine millimeter firearm. It was a handgun. I don't remember exactly with this large magazine. And I think that's sort of that. That is an issue, I think. And I'll continue on exactly what happened. But I do want to address that because the the idea of a large capacity magazine, the threshold is 15 rounds. This firearm had 16 rounds and there's nothing in the record from which I think any court could presume that it was obvious to Mr. He sure knew how he knew how to use it. He didn't have to fumble with it. He was familiar with that gun. Yes, your honor. But the question of whether he could could tell that it was a 16 round magazine versus a 14 round magazine, I think, is a question that we can't make a presumption about. Why does it matter? Because I think it goes to the culpability, your honor. If he knowingly if if the government had proven that he he possesses firearm, knowing that had an extended magazine and selected it for that purpose, then I think I'm in an entirely different posture. But. And I understand why knowingly would make it factually different. It doesn't matter as to whether the guideline itself applies, correct? That is correct, your honor. And and didn't the district court consider the fact the circumstances of how the how your client acquired or got hold of the gun and used it? That it was kind of an opportunity situation. And the court addressed that and considered it. I'm kind of I mean, I can appreciate why a situation would be more egregious had it been the defendant's own gun and clear evidence of awareness intent. But if the guideline doesn't make that a factor and the district court considers it in determining the sentence. I mean, how do we do anything with it at that point when the sentence is within the guidelines? Well, I think that it's a it's a fine distinction, your honor. Certainly, the court did discuss that the crime was was an opportunistic one. However, the the opportunistic part was the possession of the firearm. The court didn't address the nature of the firearm. And I think that's where the distinction I'm trying to make is, is that he was certainly culpable for possessing the firearm. He's culpable for having a previous crime of violence. He's culpable for his criminal history. So all those things he is culpable for. But the nature of the firearm is the thing that was not considered when the judge was considering the thirty five fifty eight three. So it's like fifty five a factor. So I want to make sure I understand that. Are you arguing he just didn't give enough indication that he had understood that distinction that you just made? Is that your primary argument that there wasn't enough explanation that the district court took into account that? I think that the argument is, is that the court didn't consider weighing the nature of the possession of the extended magazine with the thirty five fifty three factors. Things like the the need to protect the public or the dangerousness of the person or even deterrence. Because the purpose of adding this to the guidelines after the end of the semiautomatic assault rifle ban was very specifically to address prohibited persons having a more dangerous firearm. And so for him to not have any culpability for the fact that there was an extended magazine does lessen the question. But there's two ways you could look at that. You could say I wondered about this. Is that, you know, in effect, if there's, you know, the absence of intent in this way, you describe it. There's a duty not to apply the guidelines. And at times that seemed like you were arguing that. But there's another way you could argue it, which is, OK, the district court needed to, if he was going to apply it, you know, give more of an explanation. First being kind of almost a legal duty. The second being a failure to explain it. Are you saying the latter? Are you saying the former? Can you tell me what the nature of the argument is? Yes, your honor. And the district court, when it imposed its sentence, didn't it didn't consider a downward variance at all. In fact, a district court said, you know, I'm considering something at the high end. The court didn't address the nature of his possession of the magazine at all. Well, I mean, let me ask you about that, because I don't know that that's fair with Judge Eagles is a pretty experienced judge. And she didn't maybe use the precise words that you're now suggesting she should have. But she did say, first of all, she and I'm just paraphrasing part of what she said. The nature and circumstances are aggravated. He chooses to get a gun. And then she says this. It may well have been a crime of opportunity, as his counsel says. But, you know, he had to get the gun. So she's acknowledging that the gun just happened to be there. Your client grabbed it and it went south from there. I mean, why isn't that enough? I mean, she's acknowledging that he didn't intend to start out by grabbing a high magazine weapon. It was just there and used it. But in her mind, she didn't focus on the fact that he had to pick the gun up. He had to take it outside. He had to shoot it. And that's intentional. And it's so dangerous. That seems pretty nuanced to me. In your honor, she did essentially cover most of the bases in the in the when she pronounced her sentence. And I think that my argument is that when she discusses the opportunistic nature of it, that it's the possession of the firearm itself and that she doesn't address the fact that his guidelines were increased for the possession of what's considered a more dangerous weapon when there's nothing in the record that we know that he even knew that it had 16 rounds versus a 14 rounds. That's a fairly, you know, we have some variety in our cases about what district courts must explain and must not explain. But that that would be an extraordinary level of detail, wouldn't it? That a district court must give not just to say what Chief Judge Diaz mentioned, that this is a crime of opportunity, acknowledging that fact, but say, well, you must not only say that, but you must then go further and say, well, let me consider whether his head sufficient intent. You know, when the guy doesn't even call for intent, it just seems like. That's what we're putting a lot of, you know, constraints on district courts if we require that level of detail. And I don't disagree with that. And it's a it's a a very thin line on the question of procedural versus substantive error. And I am not claiming that Judge Eagles committed any procedural error, that she didn't say the right magic words. She certainly said enough to indicate that she considered issues in mitigation. It's really that then when applying sort of the facts of of the case to the 3553A factors that she did err by not doing that at all. As far as the fact that her his guidelines were increased by two levels for something that it's sort of a strict liability issue. So the guideline was correctly calculated. But to also consider his culpability and then use that to consider the thirty five fifty eight fifty five three. Consider the sentencing factors and then very downward to because he really had no culpability for that two level increase. The court has no other questions. I see my room. Thank you, Miss Gleason. You've got some time for rebuttal. Morning, Miss Neymar. Thank you, Your Honor, it may please the court, Julie Neymar for the United States. As I think the court has recognized, this isn't a terribly difficult case on these facts. This is essentially a case about the standard of review. We know the standard is reasonableness. We know what that means. We look at the procedural reasonableness. We look at the substantive reasonableness. But why? Why are we asking that question in this particular case for a guidelines sentence? Well, and it's not challenging procedural reasonableness. This is a substantive reasonableness. Absolutely, Your Honor. And the question I would have you is, are there any circumstances that you think of which a district court might be required to impose a downward variance? Absolutely required. No, I wouldn't commit to that, Your Honor. No, I think the decision to vary is is one that is at the heart of the district court's discretion. And it's bound up in those procedural requirements. The court has to listen to the request for a variance. The court has to carefully consider the arguments for a variance, consider the record, evaluate that request in light of the 3553A factors. But ultimately, it's the court's decision to decide whether a variance, either upward or downward, is justified. And it really goes all the way back to the Sentencing Reform Act. My friend talked about the historical nature of this inquiry. And that's just so important because under the act, the guidelines were mandatory. And the Sentencing Commission was carrying out a very detailed, very complex mandate from Congress at Section 9. Does base level increase require showing mens rea? I'm sorry, Your Honor, can you say that? Does base level increase require showing mens rea? It does not, Your Honor, unless... That's what's being argued here. It does not, Your Honor. really dealing with the base level offense. And the question from her perspective is that, well, he didn't know this gun was one that was over 15. Does that, do we look then? I called it something that looked like a collateral attack to me, but I won't use that term in describing it otherwise. But the question really is, is mens rea required in determining whether to impose a base level increase? Your Honor, we know that the guidelines tell us when mens rea is required in the base offense level calculation. If the guidelines don't mention a scienter requirement, there is not. And the Sixth Circuit in the Sewell case had occasion to look at that very question, even though this court has not, to my knowledge, yet addressed it. That case is very persuasive because it points out that the guidelines absolutely know how to make it clear when there is a scienter requirement, if they want one to be considered by the district court. And the amendment that actually created the language at issue here for the large capacity magazine enhancement included another provision, another amendment that added a scienter requirement in it, and it had to do with the trafficking enhancement. So the commission clearly knew exactly how to impose that requirement if they wanted to do so. And here they did not. And I'd also like to point out that that base level enhancement wasn't a new enhancement. The amendment merely rephrased the verbiage because it had been linked to the definition of an assault weapon at 921A30. And when that provision was repealed, we could no longer refer back to the language of that statute to know what brought about the enhancement. And so we had to lay it out in actual definitional text. So that's why we see the current phrasing used in the guidelines. I thought I heard you say earlier that the district court certainly considered all the relevant factors. And indeed, that's what's required in order to satisfy procedural reasonableness. You know, there's some logical force, I think, to the argument that Mr. Morgan made below that. Well, you know, I didn't go out and purchase a weapon with a high capacity magazine. It just happened to be there. I grabbed it and started firing. And that is a distinction, I think, that is significant. And I think a district court would err if it simply ignored that as a procedural matter. Do you disagree? I don't, Your Honor. Absolutely. But your point is that the court considered that and said it doesn't matter. Well, first said, I acknowledge your argument, but here is why I think it doesn't matter in this context and why I think the sentence that I'm about to impose is appropriate. And she laid out all the reasons Judge Eagles did why, why she thought the sentence was appropriate. And I guess from your point of view, that is essentially a bulletproof sentence. I wouldn't say bulletproof, but in this may be a bad analogy. Well, justified context. Yeah, because it all goes back, Your Honor, to the Rita case essentially. And and its discussion of why we can give a presumption of reasonableness to a guideline sentence. It's not only because the court abided by the requirements of procedure. It's because that guideline range wasn't created in a vacuum. It was created by the commission after evaluating actual data. Ten thousand plus cases and their outcomes were analyzed. The mandate of Congress was considered and carefully incorporated into the guidelines. And so when the outcome of that quantification of the harm of a particular offense coupled with the background of a particular offender, when that results in a certain range and then in a parallel fashion, the district court judge is applying the thirty five fifty three factors and carefully analyzing the record in that light. If the court then arrives at the decision that the guidelines range remains appropriate here and the sentencing commission made that same conclusion, there's a coherence created by that. That makes the sentence presumptively reasonable because it's not a binding presumption. Of course, there could be the odd case where the court still arrives at a sentence that's too high. But it's it's presumed reasonable because that's how Congress originally defined reasonable. It was the Sentencing Reform Act, the guidelines. If the guidelines were appropriately followed, that was a legal sentence. And so after Booker. The courts had to devise a way to quantify that process of analyzing reasonableness. And it chose this presumption for the appellate courts because of the process that had already been followed by both the commission and the sentencing court. When they came together, that just created a strong presumption that that sentence was legal and that it was reasonable. And another thing just to just to mention briefly is that this presumption is only an appellate presumption. The district court judge can't look at that PSR and say, oh, here's the guideline range. Nobody is saying that there is an error in the guideline range. And so I'm going to just stick with this range unless somebody tells me otherwise. No, the court still has to conduct an independent analysis and individualized assessment of this defendant. This defendant's conduct to see if that range is appropriate in that particular case. So there is no presumption at the district court level, as this court recognized in, I believe, the Mendoza case. And it's very important that we we follow that principle. The district court has to do the analysis from scratch, consulting the guidelines, consulting the thirty five fifty three factors, listening carefully to the arguments of the defendant, but then ultimately reaching his or her own conclusion about what is sufficient but not greater than necessary. Just addressing very briefly. The. The actual enhancement here. Just a couple other minor points about that enhancement, the harm represented by the enhancement is present, whether or not the defendant had any intent regarding that particular magazine or weapon. The Sentencing Commission was asked to evaluate harms because it was trying to make the sentences across the nation more uniform. Instead of this judge sentencing this person to three years and this judge sentencing that person to eight years for the exact same 922 G1 offense. We want it to be more uniform. That's what Congress intended. And so when it devised this particular enhancement, it was recognizing the particular harm of that large capacity magazine or, as previously defined, that assault weapon with particular characteristics, the particular harm that that presented. Can I ask you about that? Miss Gleason makes an argument that her client had no way of knowing just how many rounds could be fitted into that magazine or even what the number of how big of a capacity the magazine actually was, because as from their point of view, he just picked it up without even considering that. I'm not sure that that argument, that particular argument was made to the district court. And I mean, tell me if I'm wrong about that. Actually, Your Honor, it was. If you would look to J.A. 60, you'll see where Mr. Morgan's trial defense counsel did say in most cases, the reason that that enhancement is applied is the reason for a more severe sentence is because it represents a statement when a person who is already deemed to be a danger to society, a convicted felon, arms himself and then takes the extra step of increasing the destructive capacity of the weapon with a high capacity magazine. Court then replies, I see what you are saying. All right. Thank you. So we hear we hear the court specifically listening to counsel on that argument and engaging with counsel. Back to the substantive reasonableness issue here. We have to look at the fact that the court had the discretion to vary. But it chose not to exercise it. And in that sense, a guideline sentence is almost even more reasonable than pre Booker than it would be when it was mandatory, because then the court had to remain in the guideline range unless there was a specific reason to depart. And it had to be. Went down a bit from the top of the guidelines range, right? Absolutely, Your Honor. Yes. The top of the range was one hundred and fifteen months. And the court giving careful consideration to those arguments and mitigation, such as the fact that Morgan contacted law enforcement and told them where the gun could be found to prevent it from being inadvertently found by children. And some of his other arguments, including this crime of opportunity argument, came down to one hundred and ten months, despite commenting that this was perhaps one of the most dangerous and serious examples of a 922 G1 offense, a case where someone not only possesses a weapon but shoots it. The court said it's not what you in it's not necessarily just what you intend, but it's what you ultimately do with the weapon. And that's what I find very important in this case. The court said, when you fire a weapon, you create just extremely dangerous situation, even in a situation where a defendant perhaps didn't intend to cause immediate physical harm to to the girlfriend. But it could have gone off course, could have, you know, misfired, could have had bad aim. We don't know. Anytime you're discharging a weapon, it's just an extremely serious and aggravated situation. But despite that, the court still came down to one hundred and ten months rather than one hundred and fifteen. In closing, I'd like to just invite the court to recall the Fowler case where this court recognized that sentencing is a dialogue between the trial judge and the appellate court judge. And it's a dialogue where the trial court judge has an institutional advantage. And it's for this court to respect that institutional advantage in the appropriate cases to defer to the court below. Thank you. Thank you very much. I think sort of sitting there thinking about sort of what is the heart of the argument that I'm making, and it is that there are sort of two issues here. Were the guidelines calculated correctly? And then the separate question that seems to be confounded, but I think it's a separate question of whether the guidelines are appropriate in this particular case. The guidelines were calculated correctly. It is essentially a strict liability issue of the nature of the magazine and the firearm he possessed. The issue that the district court did not consider when considering the appropriateness of the sentence against those sentencing factors is whether the guidelines are appropriate in this case. It's kind of a rare case, I think, Your Honors, where a defendant agrees that the guidelines are correctly calculated, but that those calculations don't actually appropriately account for the lack of culpability. I mean, he earned the four-level enhancement for possessing a firearm in connection with another felony offense. Can I ask you a question? So if we were to agree with you, what would we tell the district court to do? I think what the district court should have done in abuse discretion when it did not do was exactly that, to consider the appropriateness of the guideline calculation, not just whether the math is correct, but whether looking at this person and these circumstances, whether this enhancement is something that does make a difference when considering the sentencing factors for things like dangerousness. And you don't think that bearing down from the top of the guidelines range does the trick? I don't, Your Honor. She addressed the other issues in mitigation. She did not address the appropriateness of the guideline calculation. Is it your view that if Judge Eagles had done exactly what you just said she should have done, she could not arrive at the sentence that she arrived at? Your Honor, she could have arrived at that same sentence. And as we're asking to vacate the sentence to have the court make sure that she considers the appropriateness of the guidelines, not just for a resentencing. As long as the court supports its sentence, certainly, especially within a guideline sentence, that that would not be reversed. I consider Judge Eagles to be a very patient and thorough judge, but I think she might be steaming mad if she saw this case again. I would step very slowly, Your Honor, when I entered that courtroom. She wouldn't see it for long. She would re-sentence him without even considering this. It's entirely possible, Your Honor, and this just happens to be a case where there isn't the presumption of harmlessness because she didn't make that pronouncement. You know, one point you're making is the sentencing commission has a unique role. And over the years, in terms of how we view the guidelines, the commentary to it is a subject. But in terms of the kind of argument you're making, it's one of the reasons it chooses to have large magazines to be an enhancement as opposed to lower ones. And it seems that the considerations you bring into bear would be part of what the sentencing commission would deal with. And if we go down this road, where does it go with other things that the sentencing commission do? Do we second guess as to what the policy behind this and that when, you know, over the years, it's the very purpose of the sentencing commission? Well, Your Honor, I'm not arguing that the guidelines themselves should be changed. There are some other things, for instance, in the firearm guidelines. The possession of a stolen firearm is another sort of strict liability case. If the firearm was stolen before the person was born, then that's something that the court would consider when considering a variant sentence. So I don't think that it's something that rises to the level of the sentencing commission needs to make sure that the judges are doing these kind of analyses. I think, frankly, that it's that's the job of defense counsel, Your Honor, to make sure that these things are brought before the district court. And in this case. All right, thank you very much. Thank you. I want to thank both counsel for their fine arguments this morning, still morning. We'll come down and greet you. Then we're going to go back and conference these cases. And then after we're done with that, we'll come back into the courtroom and Dean will be happy to answer questions. All the hard questions go to my colleagues. All right. We'll adjourn court. The court is adjourned.
judges: Albert Diaz, James Andrew Wynn, A. Marvin Quattlebaum Jr.